UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSCAR LEANDRO RODRIGUEZ SOLORZANO,<br>Petitioner,<br>v.<br>WARDEN OF THE MESA VERDE DETENTION FACILITY, *et al.*,<br>Respondents. | Case No. 1:26-cv-04657 (AMO)<br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br>Re: Dkt. No. 1 |

Petitioner Oscar Leandro Rodriguez Solorazano filed a Petition for Writ of Habeas Corpus seeking release from the custody of U.S. Immigration and Customs Enforcement ("ICE") or, alternatively, a bond hearing. Dkt. No. 1 at 17. Petitioner raises claims that are functionally identical to those this Court, and many others within this district, have already addressed in prior orders. Namely, Petitioner argues that his detention without any pre-deprivation process by immigration authorities violated his procedural due process rights. *See* Dkt. No. 10 at 4–6. For the reasons that follow, the Court grants the petition and orders Petitioner's immediate release.

## I. BACKGROUND

Based on the parties' submissions, the Court finds the following facts. Fleeing Columbia, Petitioner entered the United States on November 28, 2023, and was taken into custody by the Department of Homeland Security ("DHS"). Dkt. No. 1 at 5. Two days later, he was paroled into the United States and placed in removal proceedings. *Id.*; Dkt. No. 9-1 at 2; Dkt. No. 9-5 at 1. After his release, Petitioner began living in West Jordan, Utah with his wife, applied for asylum, and began attending his scheduled ICE check-ins. Dkt. No. 1 at 5–6.

Petitioner was arrested by police on May 23, 2026. Dkt. No. 9-2 at 4. The basis for this arrest is disputed. Petitioner claims that the arrest was for a noise complaint. Dkt. No. 1 at 6.

United States District Court
Eastern District of California

However, records submitted by Respondents indicate that the arrest was for assault and public intoxication. Dkt. No. 9-2 at 4. Neither party has indicated whether this arrest resulted in any charges being filed. Petitioner was transferred to ICE custody by police on or around May 24, 2026. Dkt. No. 1 at 5; Dkt. No. 9-1 at 2.

## II. LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. DISCUSSION

Petitioner claims that his re-detention without individualized consideration of whether he poses a flight risk or a danger violates the Due Process Clause. Dkt. No. 10 at 2–3. Respondents counter that Petitioner is mandatorily detained under 8 U.S.C. § 1225(b) as an applicant for admission, although they acknowledge that this Court, and many others within this district have rejected that argument. Dkt. No. 9 at 2–3.

As it has in the past, the Court again rejects Respondents' argument that Petitioner may be mandatorily detained under § 1225(b) and proceeds to Petitioner's due process claim. *See Hernandez Ojeda v. Warden,* 1:26-CV-3561-AMO, 2026 WL 1475816, at *2 (E.D. Cal., May 26, 2026). Courts analyze procedural due process claims in two steps: first, courts consider whether there exists a protected liberty interest under the Due Process Clause and, second, they evaluate what procedures are necessary to ensure that any deprivation of that protected liberty interest

accords with the Constitution. *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

Courts in this Circuit have repeatedly found that noncitizens released from immigration custody acquire a liberty interest in their continued release. *See, e.g.*, *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too does [the noncitizen] have a liberty interest in remaining out of custody on bond."); *Labrador-Prato v. Noem*, No. 1:25-CV-1598-DC-SCR, 2025 WL 3458802, at *5 (E.D. Cal. Dec. 2, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *Rico-Tapia v. Smith*, No. 1:25-CV-0379-SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) and *Morrissey v. Brewer*, 408 U.S. 471, 481-82 (1972)).

This reasoning applies to Petitioner here. He was released into the United States in 2023. Dkt. No. 1 at 5. Petitioner remained out of custody, living in the United States with his wife, until his arrest on May 24, 2026. *Id.* Though ICE re-detained him following a criminal encounter, there is no allegation that he violated a condition of his prior release. Accordingly, Petitioner maintains a liberty interest in his continued freedom.

Given that Petitioner has a protected liberty interest, he was entitled to process commensurate with that interest. Many courts have applied the test established by the Supreme Court in *Mathews v. Eldridge* in considering what process is due in the immigration context. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022). There are three factors relevant to the due process inquiry under the *Mathews* framework: (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation ... and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

First, Petitioner has a significant private interest in his continued release. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at

the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Petitioner acquired a private interest in his continued freedom over the almost three years of release on parole in the United States. *See Noori v. LaRose*, No. 25-CV-1824-GPC-MSB, 2025 WL 2800149, at *10 (S.D. Cal. Oct. 1, 2025) ("Petitioner has a private interest in remaining free, which developed over the year he resided in the United States.").

Second, a pre-deprivation bond hearing in immigration court would have addressed that interest, and the risk of erroneous deprivation without a bond hearing is high. Prior to releasing Petitioner into the United States, the Government necessarily determined that he presented neither a danger to the community nor a risk of flight. *See Pinchi*, 792 F. Supp. 3d at 1034 (explaining that a petitioner's "release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community"). Absent a pre-deprivation bond hearing in front of a neutral arbiter, the risk of erroneous deprivation is high. *See Omer G.G. v. Kaiser*, No. 1:25-CV-1471-KES-SAB, 2025 WL 3254999, at *7 (E.D. Cal. Nov. 22, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community.") (quoting *Zadvydas*, 533 U.S. at 690).

This is particularly true where the basis of Petitioner's criminal arrest which led to his re-detention by ICE is disputed. On one hand, Petitioner claims his arrest was due to a noise complaint, whereas Respondents cite to a more serious offense for assault and public intoxication. Respondents, however, offer no evidence or argument indicating that any procedural safeguards have been employed following Petitioner's re-detention to ensure that it was justified based on this criminal encounter; more generally, they give the Court no reason to believe that any efforts have been made at all to prevent erroneous deprivation of Petitioner's liberty given their contention that Petitioner is subject to mandatory detention. Accordingly, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *A.E. v. Andrews*, No. 1:25-CV-0107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025), *report and recommendation adopted*, 2025 WL 1808676 (E.D. Cal. July 1, 2025); *see also*, *See J. O. J.L. v. Blanche*, No. 1:26-CV-4142-DAD-JDP, 2026 WL 1745732, at *4 (E.D. Cal. June 17, 2026), *report and*

*recommendation adopted*, 2026 WL 1832766, at *1 (E.D. Cal. June 25, 2026) (finding pre-deprivation process was necessary even where petitioner had been initially arrested by local law enforcement).

"Third, the Government's interest in detaining Petitioner without … a hearing is 'low.'" *Salazar v. Casey*, No. 25-CV-2784-JLS, 2025 WL 3063629, at *5 (S.D. Cal. Nov. 3, 2025) (citation omitted). "In immigration court, custody hearings are routine and impose a 'minimal' cost." *Carballo v. Andrews*, No. 1:25-CV-0978-KES-EPG, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) (quoting *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)). Petitioner was entitled to such a hearing before he was re-detained.

## IV. CONCLUSION AND ORDER

For the reasons stated above, the Petition is GRANTED. IT IS HEREBY ORDERED that:

1. Respondents immediately release Petitioner from their custody.

2. Respondents shall not impose any additional restrictions on Petitioner, unless they are determined to be necessary at a future pre-deprivation and/or custody hearing.

3. If the Government seeks to re-detain Petitioner, it must provide no less than seven (7) days' notice to Petitioner and must hold a pre-deprivation bond hearing at which the government will bear the burden of demonstrating by clear and convincing evidence that Petitioner poses a flight risk or a danger to the community if not detained.

4. This Order does not address the circumstances in which Respondents may detain Petitioner in the event he becomes subject to an executable final order of removal.

5. The Clerk of the Court is directed to close this case and enter judgment for Petitioner.

**IT IS SO ORDERED.**

Dated: September 16, 2026

ARACELI MARTÍNEZ-OLGUÍN
United States District Judge